IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| RICH MEDIA CLUB, LLC, a Delaware limited liability company, and RICH MEDIA WORLDWIDE, LLC, a Delaware limited liability company,<br><br>Plaintiffs,<br><br>vs.<br><br>NIKOLAI MENTCHOUKOV, JAMES W. ROWAN, and LEFTSNRIGHTS, INC., a Delaware corporation, dba LIQWID, and JOHN DOES 1–25,<br><br>Defendants. | MEMORANDUM DECISION AND ORDER ON DEFENDANTS' MOTION TO DISMISS<br><br><br><br>Case No. 2:11-CV-1202 TS |

This matter is before the Court on Defendants' Motion to Dismiss under Fed. R. Civ. P. 12(b)(6).[1] A number of other motions are also before the Court, including Plaintiffs' Motion for Preliminary Injunction.[2] The parties have requested that the Court rule on the instant Motion on an expedited basis before considering the remaining motions.

I. BACKGROUND

Plaintiffs Rich Media Club, LLC and Rich Media Worldwide, LLC (collectively "Plaintiffs" or "Rich Media") have brought a number of claims against Nikolai Mentchoukov,

---

[1] Docket No. 24.

[2] Docket No. 5.

James Rowan, and LeftsnRights, Inc., dba LIQWID (collectively, "Defendants"). Plaintiffs allege that Mentchoukov used information gained during his employment with Rich Media to create a competing product, LIQWID, with Rowan. Plaintiffs allege that by doing so, Mentchoukov breached his employment agreement contract, the implied covenant of good faith and fair dealing, and fiduciary duties. Plaintiffs also argue that Defendants' behavior violated a number of statutes, that Defendants' converted Rich Media's intellectual property, and that Defendants should be liable for tortious interference with economic relations, unjust enrichment, civil conspiracy, fraudulent nondisclosure, and various other claims.

Defendants have moved the Court for dismissal of Defendant James Rowan and dismissal of Plaintiffs' 1st and 4th–15th claims for relief. Defendants argue that "the Complaint contains no allegations that, if taken as true, state a claim for relief specifically against defendant Rowan" and that claims 1 and 4-15 "fail to state a claim under the federal pleading requirements," as each is either "fatally flawed in its legal premise and/or is not sufficiently supported by well-pled factual averments."[3] In sum, Defendants argue that "Rich Media has turned a straightforward contract dispute into a 15-claim house of cards, founded on allegations that state a claim for nothing more than breach of contract."[4]

## II. LEGAL STANDARD

A.   12(B)(6) MOTION TO DISMISS

In considering a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6), all well-pleaded factual allegations, as distinguished from conclusory allegations, are accepted as true and viewed in the light most favorable to Plaintiffs as

---

[3] Docket No. 24, at 1-2.

[4] Docket No. 88, at 3.

the nonmoving party.[5]  Plaintiffs must provide "enough facts to state a claim to relief that is plausible on its face,"[6] which requires "more than an unadorned, the-defendant-unlawfully harmed-me accusation."[7]  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'  Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[8]  "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."[9]  As the Court in *Iqbal* stated,

> only a complaint that states a plausible claim for relief survives a motion to dismiss.  Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not show[n]—that the pleader is entitled to relief.[10]

When considering the adequacy of a plaintiff's allegations in a complaint subject to a motion to dismiss, a district court not only considers the complaint, but also "documents incorporated into the complaint by reference, and matters of which a court may take judicial

---

[5] *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).

[6] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007).

[7] *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

[8] *Id.* (quoting *Twombly*, 550 U.S. at 557) (alteration in original).

[9] *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991).

[10] *Iqbal*, 129 S. Ct. at 1949-50 (alteration in original) (internal quotation marks and citations omitted).

notice."[11] Thus, "notwithstanding the usual rule that a court should consider no evidence beyond the pleadings on a Rule 12(b)(6) motion to dismiss, '[a] district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity.'"[12] If documents outside the pleadings are presented by the parties, they must either be excluded from consideration by the Court or "the motion must be treated as one for summary judgment under Rule 56" and "all parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."[13]

B.  PLEADING SPECIAL MATTERS

Rule 9(b) sets forth specific requirements for pleading fraud, mistake, and conditions of the mind. "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." However, this Rule "do[es] not require courts to credit a complaint's conclusory statements without reference to its factual context."[14] The requirements of Rule 8 still apply "[a]nd Rule 8 does not empower respondent to plead the bare elements of his cause of action, affix the label 'general allegation,' and expect his complaint to survive a motion to dismiss."[15]

---

[11] *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (citing 5B WRIGHT & MILLER § 1357 (3d ed. 2004 and Supp. 2007)).

[12] *Alvarado v. KOB-TV, LLC*, 493 F.3d 1210, 1215 (10th Cir. 2007) (quoting *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002)).

[13] Fed. R. Civ. P. 12(d); *see also Teton Millwork Sales v. Schlossberg*, 311 F. App'x 145, 149 (10th Cir. 2009).

[14] *Iqbal*, 129 S. Ct. at 1954.

[15] *Id.*

Under Utah law, to bring a claim sounding in fraud, a party must allege (1) that a representation was made (2) concerning a presently existing material fact (3) which was false and (4) which the representor either (a) knew to be false or (b) made recklessly, knowing that there was insufficient knowledge upon which to base such a representation, (5) for the purpose of inducing the other party to act upon it and (6) that the other party, acting reasonably and in ignorance of its falsity, (7) did in fact rely upon it (8) and was thereby induced to act (9) to that party's injury and damage.[16]

### III. ANALYSIS

Defendants have moved the Court for dismissal of Defendant James Rowan and dismissal of Plaintiffs' 1st and 4th–15th claims for relief. Each issue is addressed in turn.

A.     ALLEGATIONS SOUNDING IN FRAUD

Defendants argue that "Plaintiffs' allegations broadly and without specificity invoke 'fraud' nine times, 'intentional' twelve times, 'willful' six times, and 'malicious' four times. However, Plaintiffs state that they "assert[] only one claim sounding in fraud, against Mentchoukov for fraudulent nondisclosure. [The] remaining claims are decidedly not fraud claims."[17] The Court will therefore only address the heightened Rule 9(b) fraud standard with respect to Plaintiffs' claim for fraudulent nondisclosure, discussed below.

B.     CLAIM 1 – PATENT INFRINGEMENT OF THE '590 PATENT

Plaintiffs' first claim is for patent infringement of United States Patent No. 7,313,590 ("the '590 patent").[18] Defendants argue that this claim should be dismissed as the allegations are

---

[16] *Gold Standard, Inc. v. Getty Oil Co.*, 915 F.2d 1060, 1066-67 (Utah 1996) (citing *Crookston v. Fire Ins. Exch.*, 817 P.2d 789, 800 (Utah 1991)).

[17] Docket No. 74, at 5.

[18] Docket No. 2, at 6, 15.

supported "by nothing more than information and belief" and because "they are fatally conclusory."[19] Plaintiffs' first claim states: "Upon information and belief, Defendants . . . have operated their LIQWID business and offered its associated products in a manner which directly infringes one or more claims of the '590 Patent."[20] Plaintiffs argue, again upon information and belief, that Defendants "incorporate methods and systems described in, at a minimum, claims 8 and 9, and others, of the '590 Patent, including but not limited to the FSDC Technology."[21] "Specifically . . . Defendants offer, through their LIQWID business, a product that passes viewable impression data over the internet in real time to a server through a one-way communication that goes unnoticed to the viewer."[22]

Taking these assertions together, Plaintiffs claim that Defendants offer a product that passes viewable impression data over the internet in real time to a server through a one-way communication that goes unnoticed to the viewer, thereby violating at least claims 8 and 9 of the '590 Patent. This claim does generally identify the alleged method of infringement. However, the statement is also based merely on "information and belief" and does not go into detail about how this process occurs or what basis Plaintiffs have for their belief that this infringement occurs. Therefore, the Court will dismiss this claim without prejudice to Plaintiffs' filing an amended complaint setting forth the claim with greater specificity.

---

[19] Docket No. 25, at 16.

[20] *Id.* at 15.

[21] *Id.*

[22] *Id.*

C.   CLAIM 4 – BREACH OF FIDUCIARY DUTY

Plaintiffs' fourth claim is for breach of fiduciary duty against Mentchoukov. This claim alleges that "[a]t all material times, regardless of his job title, Mentchoukov served in the role of chief technology officer at Rich Media," and that therefore he owed Rich Media fiduciary duties.[23] Plaintiffs then argue that Mentchoukov breached those duties by using company information to create a competing product, soliciting customers on behalf of his competing business, and failing to perform his duties as Chief Technology Officer.[24] However, Plaintiffs' own allegations do not support this claim. Plaintiffs' first allege that RMC employed Mentchoukov as its chief technology officer in August 2002.[25] Earlier in their Complaint, Plaintiffs state that the employment agreement was terminated and a consultant arrangement was entered into through an October 23, 2010, agreement ("October Agreement").[26]

The October Agreement states that "Mentchoukov's at-will employment with Rich Media Club, LLC terminated on October 15, 2010, and . . . Mentchoukov has no further obligation to the Companies, except pursuant to (i) Delaware limited liability company law and (ii) the "Consulting Engagement" described below."[27] The Consulting Engagement does not state that Mentchoukov is Rich Media's Chief Technology Officer, nor does it impose any fiduciary duties

---

[23] Docket No. 2, at 18.

[24] *Id.* at 18-19.

[25] *Id.* at 2.

[26] *Id.* at 8-9. This Agreement is referred to in Plaintiffs' Complaint and the parties have not disputed its authenticity, with both parties providing identical copies of the October Agreement as part of the briefing on the instant Motion. Docket No. 25 Ex. 4; Docket No. 74 Ex. 1. The Court will therefore include the October Agreement in its consideration of Defendants' Motion to Dismiss.

[27] Docket No. 25 Ex. 4, at 4.

7

on him. Plaintiffs have not pled any non-conclusory allegations supporting a claim against Mentchoukov for breach of fiduciary duty for events occurring prior to execution of the October Agreement and have not cited to Delaware law imposing a fiduciary duty on a minority shareholder, such as Mentchoukov. Defendant Mentchoukov is bound by contractual duties, not fiduciary duties. The Court will therefore dismiss Plaintiffs' fourth claim for breach of fiduciary duty with prejudice.[28]

### D.  CLAIM 5 – VIOLATION OF UTAH UNFAIR COMPETITION ACT

Plaintiffs claim that Defendants violated the Utah Unfair Competition Act. Unfair competition is defined by statute as "an intentional business act or practice that . . . is unlawful, unfair, or fraudulent; and . . . leads to a material diminution in value of intellectual property."[29] In support of the material diminution element, Plaintiffs simply state that "Defendants' conduct as alleged herein has, upon information and belief, led to a material diminution in the value of Rich Media's intellectual property."[30] This is no more than "a naked assertion" without "further factual enhancement," which, under *Iqbal* and *Twombly*, is insufficient to maintain a claim.[31] The Court will therefore dismiss this claim without prejudice.

---

[28] Defendants also argue that, even if Mentchoukov were Rich Media's Chief Technology Officer, this would not impose any fiduciary duties on him under Delaware law. Docket No. 25, at 10-12. However, as Plaintiffs' own allegations do not support their claim, the Court will not engage in an analysis of Delaware law.

[29] Utah Code Ann. § 13-5a-102(4)(a).

[30] Docket No. 2, at 19.

[31] *Iqbal*, 129 S. Ct. at 1949; *Twombly*, 550 U.S. at 557.

E.     CLAIM 6 – CONVERSION AND THEFT

Plaintiffs' sixth claim is for conversion and theft. Plaintiffs have stipulated to the dismissal of their civil theft claim.[32] The parties agree that, under Utah law, "conversion is an act of wilful interference with a chattel, done without lawful justification by which the person entitled thereto is deprived of its use and possession."[33] Plaintiffs claim that "Defendants knowingly and intentionally converted Rich Media's patented and patent-pending technology, as well as the RealVu Technology and Rich Media's software, source, and access codes, for their use and benefit with the intention of depriving Rich Media of the same." Plaintiffs do *not* claim that Rich Media has been deprived of the use of any of its source code, software, or access codes, and further stated at the hearing that this claim is premised solely on the *contractual* duty to turn over improvements that Mentchoukov made on the software. Therefore, as there is no deprivation of possession or use of a chattel, the Court finds that Plaintiffs have not stated an adequate claim for conversion. The Court will therefore dismiss claim six of Plaintiffs' complaint with prejudice.

F.     CLAIM 7 – TORTIOUS INTERFERENCE WITH ECONOMIC RELATIONS

Defendants assert that Plaintiffs fail to state a claim for tortious interference with economic relations. To recover on such a claim under Utah law, a plaintiff must prove "(1) that the defendant intentionally interfered with the plaintiff's existing or potential economic relations, (2) for an improper purpose or by improper means, (3) causing injury to the plaintiff."[34]

---

[32] Docket No. 74, at 13.

[33] *Fibro Trust, Inc. v. Brahman Fin., Inc.*, 974 P.2d 288, 295-96 (Utah 1999) (quotation omitted).

[34] *Leigh Furniture & Carpet Co. v. Isom*, 657 P.2d 293, 304 (Utah 1982).

9

1. Improper means

Plaintiffs have failed to properly allege an improper means. In their Opposition to the instant Motion, Plaintiffs argue that they alleged "deceit or misrepresentation" by claiming that Mentchoukov "falsely represented to an important potential customer and investor, in emails beginning October 7, 2011, that he owned Rich Media product and that Rich Media possessed a lower value than it did."[35] However, examining Plaintiffs' Complaint, Plaintiffs' allegations are that "Mentchoukov sent an email to the Potential Client stating 'Would [the Potential Client] be interested in buying 20% of RealVu from me personally for $10 million (I own 25%)?'"[36] Plaintiffs previously state in their Complaint that "Mentchoukov owns a 25% ownership interest in" both Rich Media Worldwide and Rich Media Club. Therefore, Plaintiffs' own allegations show that there is no basis for their claim that Mentchoukov "falsely represented" that he owned 25% of Rich Media. Furthermore, the fact that Mentchoukov was willing to sell his 25% share in Rich Media for less than Rich Media itself would have valued those shares does not constitute a false representation "that Rich Media possessed a lower value than it did."

To the extent that Plaintiffs could be suggesting that Mentchoukov's offering of his competing services to a Rich Media client constitutes tortious interference, there is no allegation of improper means, which include "violence, threats or other intimidation, deceit or misrepresentation, bribery, unfounded litigation, defamation, or disparaging falsehood."[37] Furthermore, to the extent that Plaintiffs allege that failure to perform contractual duties constitutes tortious interference, under Utah law "[a] deliberate breach of contract, even where

---

[35] Docket No. 74, at 15.

[36] Docket No. 2, at 11 (alteration in original).

[37] *St. Benedict's Dev. Co. v. St. Benedict's Hosp.*, 811 P.2d 194, 201 (Utah 1991).

employed to secure economic advantage, is not, by itself, an 'improper means.' Because the law remedies breaches of contract with damages calculated to give the aggrieved party the benefit of the bargain, there is no need for an additional remedy in tort."[38] Therefore, as Plaintiffs have not alleged improper means tied to interference with Rich Media's economic relations anywhere in Complaint, the Court will dismiss a claim for tortious interference with economic relations through improper means with prejudice.

2.  Improper purpose

Plaintiffs may also establish a tortious interference claim by properly alleging improper purpose.[39] "Improper purpose is established by a showing that the actor's predominant purpose was to injure the plaintiff."[40] Plaintiffs have alleged that "Defendants have interfered with Rich Media's current and prospective economic relations for an improper purpose, namely, with a specific intent to harm Rich Media." These are no more than conclusory allegations. Therefore, the Court will dismiss this claim without prejudice.

G.  CLAIM 8 – UNJUST ENRICHMENT

The elements of a claim for unjust enrichment under Utah law are: "1) a benefit conferred on one person by another; (2) an appreciation or knowledge by the conferee of the benefit; and (3) the acceptance or retention by the conferee of the benefit under such circumstances as to make it inequitable for the conferee to retain the benefit without payment of its value."[41] Defendants argue that Plaintiffs' Complaint fails, as "Plaintiffs make no allegations that they

---

[38] *Leigh Furniture*, 657 P.2d at 309.

[39] *See id.* at 304.

[40] *St. Benedict's*, 811 P.2d at 201.

[41] *Berrett v. Stevens*, 690 P.2d 553, 557 (Utah 1984).

*conferred* a benefit on Defendants.  In fact, their allegations are that Defendants *converted* Plaintiffs' intellectual property."[42]  Plaintiffs argue that this is "hairsplitting" with "no basis in law."

Plaintiffs claim in their Complaint that "Defendants' conversion of Rich Media's intellectual property, including the RealVu Technology, has conferred a substantial benefit upon Defendants."[43]  As the Court has found that Plaintiffs have failed to state a claim for conversion, Plaintiffs' claim for unjust enrichment has no basis.  The Court will therefore dismiss this claim with prejudice.

H.	CLAIMS 9 & 10 – VIOLATIONS OF UTAH CODE ANN. § 48-2C-807

Plaintiffs' ninth and tenth claims for relief stem from alleged violations of Utah Code Ann. § 48-2C-807.  Defendants move for dismissal of these claims, arguing that the Utah statute is inapplicable, as Rich Media Club and Rich Media Worldwide are both companies formed in Delaware under Delaware law.

Plaintiffs' complaint states that Rich Media Worldwide and Rich Media Club are both "Delaware limited liability compan[ies]."[44]  Plaintiffs have provided no basis to apply the Utah Revised Limited Liability Company Act to a Delaware LLC, and have also not opposed Defendants' Motion with respect to these claims.  The Court will therefore dismiss Plaintiffs' eighth and ninth claims with prejudice.

---

[42] Docket No. 25, at 20.

[43] Docket No. 2, at 22.

[44] *Id.* at 2.  Defendants have provided exhibits with documents relating to the Delaware formation of Rich Media, LLC and Rich Media Worldwide, LLC.  Docket No. 25, Exs. A, B.  However, as these documents are not referred to in Plaintiffs' Complaint, they are not properly before the Court on a Motion to Dismiss.  The Court has therefore excluded these exhibits from its consideration.

I.     CLAIM 11 – CIVIL CONSPIRACY

Plaintiffs' eleventh claim is for civil conspiracy. The parties agree that the elements of a claim for civil conspiracy under Utah law are "(1) a combination of two or more persons, (2) an object to be accomplished, (3) a meeting of the minds on the object or course of action, (4) one or more unlawful, overt acts, and (5) damages as a proximate result thereof."[45]

The entirety of Defendants' claim for Civil Conspiracy, except those elements realleged and incorporated from other sections of the Complaint, is as follows:

> 128. Upon information and belief, Defendants agreed upon a scheme to misappropriate Rich Media's intellectual property, including the RealVu Technology, as well as to infringe upon the claims of the '590 Patent, to undermine Rich Media's business opportunities, and to interfere with Rich Media's economic relations.
>
> 129. In furtherance of the conspiracy, Defendants committed one or more unlawful, overt acts—including, but not limited to, patent infringement.
>
> 130. As a result of their civil conspiracy, Defendants are jointly and severally liable for Rich Media's damages and judgment should be entered against them jointly and severally.[46]

These allegations amount to no more than "a formulaic recitation of the elements of a cause of action"[47] that is not "plausible on its face."[48] The Court will therefore dismiss this claim without prejudice.

J.     CLAIM 12 – FRAUDULENT NONDISCLOSURE

Defendants have moved for the dismissal of Plaintiffs' claim for fraudulent nondisclosure. To prevail on a claim for fraudulent nondisclosure under Utah law, "the plaintiff

---

[45] *Israel Pagan Estate v. Cannon*, 746 P.2d 785, 790 (Utah Ct. App. 1987).

[46] Docket No. 2, at 24.

[47] *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 557)

[48] *Twombly*, 550 U.S. at 547.

13

must show (1) that the nondisclosed information is material, (2) that the nondisclosed information is known to the party failing to disclose, and (3) that there is a legal duty to communicate."[49] "Whether a duty exists is strictly a question of law; it grows out of the relationship between the parties, and the duties created by that relationship."[50] Defendants argue that, as a matter of law, Mentchoukov did not have a legal duty to communicate anything to Plaintiffs,[51] while Plaintiffs argue that Mentchoukov did owe Plaintiffs a fiduciary duty as their chief technology officer.[52]

Rule 9(b) governs Plaintiffs' claim for fraudulent nondisclosure. Rule 9(b) states: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." The relevant portion of Plaintiffs' claim states: "Upon information and belief, at the time of that demand, Mentchoukov had already formulated a plan to undermine Rich Media and to appropriate Rich Media's intellectual property for his own use in a competitive business."[53] It continues, "[u]pon information and belief, Mentchoukov intentionally withheld the reasons for his demand in order to procure a release from his noncompetition agreement and other obligations contained in his Employment Agreement."[54] As these statements do not "state with particularity the circumstances constituting fraud," the Court will dismiss this claim without prejudice.

---

[49] *Mitchell v. Christensen*, 31 P.3d 572, 574 (Utah 2001).

[50] *Moore v. Smith*, 158 P.3d 562, 572 (Utah 2007).

[51] Docket No. 25, at 22.

[52] Docket No. 74, at 17.

[53] Docket No. 2, at 25.

[54] *Id.*

K.  CLAIM 13 – REPLEVIN

Plaintiffs' thirteenth claim is for replevin. Plaintiffs allege: "Rich Media is entitled to complete ownership and control over its intellectual property, including the claims of the '781 Application, the '321 Application, and the '590 Patent, the RealVu Technology, and all access codes and information. . . . Defendants have wrongfully converted, appropriated, and retained possession and control over Rich Media's intellectual property."[55] A separate Motion for Prejudgment Writ of Replevin is pending before the Court,[56] which the parties have requested the Court not consider until the instant Motion is decided.

Federal Rule of Civil Procedure 64 makes any remedy for repossession available in the state in which the court sits applicable in any action. Utah Rule of Civil Procedure 64B provides that "[a] writ of replevin is available to compel delivery to the plaintiff of specific personal property held by the defendant." "[T]he grounds for a writ of replevin require . . . that the plaintiff is entitled to possession[] and [] that the defendant wrongfully detains the property."[57]

As set forth above, Rich Media has not alleged that they have been deprived of possession of any information or tangible property, apart from any alleged improvements that were not taken by Mentchoukov, but arise under a contractual duty. Therefore, the Court would have no means of granting Plaintiffs' request for a writ of replevin and will dismiss this claim with prejudice.

---

[55] Docket No. 2.

[56] Docket No. 5.

[57] Utah R. Civ. P. 64B.

L.  CLAIM 14 – TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION, AND PERMANENT INJUNCTION

Plaintiffs' fourteenth claim is for a temporary restraining order, preliminary injunction, and permanent injunction. A separate Motion for Preliminary Injunction is pending before the Court,[58] which the parties have requested the Court not consider until the instant Motion is decided. The Court will therefore defer ruling on this issue until considering the briefing submitted by the parties on the Motion for Preliminary Injunction.

M.  CLAIM 15 – DECLARATORY JUDGMENT

Plaintiffs' fifteenth claim is for declaratory judgment. Defendants argue that this claim should be dismissed as "the Complaint fails to set forth allegations sufficient to establish the requisite elements."[59] Under Utah law, four threshold elements must be met before a declaratory judgment action may proceed. These are: "(1) a justiciable controversy, (2) parties whose interests are adverse, (3) a legally protectible interest residing with the party seeking relief, and (4) issues ripe for judicial determination."[60] Plaintiffs claim that "[a] justiciable controversy exists between Rich Media and Defendants regarding, without limitation, Mentchoukov's obligation to return the intellectual property and related property specified in the October 2010 Agreement."[61] This statement in itself lacks specificity as to what property Plaintiffs allege should be returned. However, Plaintiffs do state that the property is "specified in the October

---

[58] Docket No. 5.

[59] Docket No. 25, at 26.

[60] *Miller v. Weaver*, 66 P.3d 592, 597 (Utah 2003).

[61] Docket No. 2, at 27.

2010 Agreement."[62] As that agreement discusses a wide range of intellectual property, the Court will dismiss Plaintiffs' claim without prejudice so that Plaintiffs may file an Amended Complaint with more specific allegations regarding the property they allege should be returned.

N.  CLAIMS AGAINST DEFENDANT ROWAN

Plaintiffs have moved for the dismissal of Defendant Rowan from the suit, arguing that the Complaint speaks about Defendants collectively, makes very few factual allegations specific to Rowan, and provides no basis for holding Rowan liable for allegedly wrongful conduct by Defendant LIQWID.[63]

Plaintiffs Complaint mentions Defendant Rowan by name in paragraphs 6, 40, 49, 50, and 61.[64] The only claim that expressly names Defendant Rowan is the first claim for patent infringement, which the Court has dismissed without prejudice.[65] Plaintiffs argue that Rowan can be held liable for LIQWID's acts, as "[i]t is well established in Utah that an officer of an entity 'cannot hide his or her own fraudulent acts behind the corporate veil.'"[66] However, although Plaintiffs mention fraud many times in their Complaint, the only claim that is specifically for fraud is Plaintiffs twelfth claim for fraudulent nondisclosure—a claim that is specifically brought against Mentchoukov alone. Furthermore, Plaintiffs themselves have stated that this is their only claim sounding in fraud and the "remaining claims are decidedly not fraud

---

[62] *Id.*

[63] Docket No. 25, at 17-29.

[64] Docket No. 2.

[65] *Id.* at 15.

[66] Docket No. 74, at 19 (quoting *Armed Forces Ins. Exch. v. Harrison*, 70 P.3d 35, 41 (Utah 2003)).

17

claims."[67]  Therefore, there is no basis to hold Rowan liable for LIQWID's acts and, as no other claims are alleged against Rowan with any specificity, the Court will dismiss him from this case with prejudice.

## IV. CONCLUSION

Based on the foregoing, it is hereby

ORDERED that Defendants' Motion to Dismiss under Fed. R. Civ. P. 12(b)(6) (Docket No. 24) is GRANTED IN PART AND DENIED IN PART.  Plaintiff shall have thirty days to file an amended complaint in conformity with this Order.

DATED   April 3, 2012.

BY THE COURT:

_____
TED STEWART
United States District Judge

---

[67] *Id.* at 5.